**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL STORIE, *et al.*,<br>*Plaintiffs*,<br>v.<br>DONALD J. TRUMP, *et al.*,<br>*Defendants*. | Civil Action No. 26-00567 (AHA) |

**Memorandum Opinion and Order**

The plaintiffs—U.S. citizens, lawful permanent residents, and noncitizens who have petitioned or applied for family- and employment-based visas—sue the President and Secretary of State for applying a blanket pause on the visa applications of people from 75 countries to them. Among other things, they claim applying the blanket pause to them is contrary to the Immigration and Nationality Act and its implementing regulations as well as arbitrary and capricious. They ask for a preliminary injunction that requires the government to properly adjudicate their applications within 30 days. The court agrees the plaintiffs are entitled to a preliminary injunction, though not the exact one they ask for. Considering the plaintiffs' particular claims and showing of harm, the court orders the Secretary to lift the pause as applied to the plaintiffs and to put the plaintiff-applicants where they otherwise would have been in the application queue, which includes issuing visas to those who would have received them absent the pause.

## I. Background[1]

The Immigration and Nationality Act ("INA") and its implementing regulations allow U.S. citizens and lawful permanent residents to petition for family members to immigrate here, and allow employers to petition for people with certain professional skills and credentials to immigrate here, often with their family members. *See* 8 U.S.C. §§ 1154(a), 1153(a)–(b), 1151(a)–(d); 8 C.F.R. § 204.1 (general information about petitioning for family-based visas); *id.* § 204.5 (general information about petitioning for employment-based visas). Petitioners submit materials to U.S. Citizenship and Immigration Services. *See* 8 C.F.R. §§ 204.1(b), 204.5(d). If that agency approves the petition and the associated applicant is located outside the United States, the applicant submits a visa application and interviews with a consular officer at their local consulate. *See* 8 C.F.R. § 204.2(a)(3), (d)(3); *id.* § 204.5(n)(1); 22 C.F.R. §§ 42.41, 42.61(a), 42.62(a)–(b); *see also Immigrant Visa Process*, U.S. Department of State, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition.html (visited Aug. 25, 2026). After the interview, "the consular officer must issue the visa [or] refuse the visa" under an applicable legal provision. 22 C.F.R. § 42.81(a) (referencing 8 U.S.C. §§ 1182(a), 1201(g)).

In January 2026, the State Department announced it was pausing issuance of immigrant visas to applicants from 75 countries. *Immigrant Visa Processing Updates for Nationalities at High Risk of U.S. Public Benefits Reliance*, U.S. Department of State (last updated Feb. 2, 2026), https://travel.state.gov/content/travel/en/News/visas-news/immigrant-visa-processing-updates-for-nationalities-at-high-risk-of-public-benefits-usage.html (visited Aug. 25, 2026); *see also* ECF No. 32 at 3–6. The pause applies to those applicants regardless of whether they are otherwise

[1] The facts described reflect the court's findings based on the parties' briefing and accompanying evidence.

eligible for the visa they applied for under the INA and its implementing regulations. *See* ECF No. 32 at 4–6. The pause was indefinite, and the Department's announcement said it would be "undergoing a full review of all screening and vetting policies to ensure that immigrants from high-risk countries do not unlawfully utilize welfare in the United States or become a public charge." *Immigrant Visa Processing Updates*, U.S. Department of State, *supra* page 2. The Department also issued internal guidance to consular officers to implement the pause by refusing immigrant visas to people from the 75 countries after their interview, unless there is another basis for finding them ineligible. *See* ECF No. 32 at 3–6; ECF No. 7-3 at 1–2.

The plaintiffs are U.S. citizens, lawful permanent residents, and other petitioners and applicants for family and employment-based visas, who are at varying stages of the application process, with some having waited years for their applications to be processed. *See* ECF No. 7-4. The plaintiff-applicants are citizens of the countries affected by the pause, and their applications have either already been refused or will be refused. *See id*. The plaintiffs sued the President and the Secretary of State, asserting that the Secretary's pause should be vacated as to them because it is contrary to the INA, arbitrary and capricious, unlawfully withholds and unreasonably delays agency action, and failed to go through notice-and-comment rulemaking procedures, all in violation of the Administrative Procedure Act ("APA"). They also assert equal protection, due process, mandamus, INA non-discrimination clause, and *ultra vires* claims. The plaintiffs now move for a preliminary injunction that prohibits the government from applying the Secretary's pause to them and requires it to properly adjudicate their applications within 30 days. ECF No. 7.

## II. Discussion

"A preliminary injunction is an extraordinary remedy never awarded as of right" and, to the contrary, "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008). To obtain one, a plaintiff

must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The court finds the plaintiffs have satisfied their burden here and orders the Secretary to lift the pause on issuance of visas as applied to the plaintiffs, including issuing visas to any plaintiff that would have received one absent the pause. In doing so, the court joins the growing list of other courts that have concluded this pause on issuance of visas warrants preliminary injunctive relief. *See Sangster v. Rubio*, No. 25-cv-447, 2026 WL 222316 (D. Nev. Jan. 28, 2026); *Ullah v. Lafave*, No. 25-cv-12804, 2026 WL 1541774 (D. Mass. June 2, 2026); *Sayani v. U.S. Dep't of State*, No. 26-cv-2539, 2026 WL 2291365 (N.D. Cal. Aug. 7, 2026); *see also De Moura Gomes v. Rubio*, No. 26-cv-1883, 2026 WL 2212503 (D.D.C. July 31, 2026).

**A. The Plaintiffs' Claims Are Likely To Succeed In Part, Based On The Current Record**

The APA requires courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Based on the record at this stage, the court concludes the plaintiffs are likely to show the blanket pause on their visa applications is both contrary to the INA and its implementing regulations and arbitrary and capricious in violation of the APA.

The court starts with threshold questions of whether the plaintiffs are likely to succeed against the President under the APA and likely to show the Secretary's blanket pause is final agency action, before turning to the merits.

*1. The Plaintiffs Are Not Likely To Succeed As To The President On Their APA Claims*

Although the government does not raise the argument, the court recognizes on its own accord that the APA applies only to "agency" action and therefore does not apply to the President. *See Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992). The plaintiffs are therefore unlikely

to succeed against the President on their APA claims and, even assuming the plaintiffs are entitled to a preliminary injunction based on their APA claims, it will not apply to the President. The government does not dispute that the Secretary of State, in his official capacity, is a proper defendant for the relief sought under the APA.

2. *The Plaintiffs Are Likely To Show The Secretary's Decision To Pause Visa Issuance Is Final Agency Action*

The government argues the plaintiffs are not likely to show that the Secretary's blanket pause on immigrant visas for people from the listed countries is "final agency action" reviewable under the APA. 5 U.S.C. § 704; *see* ECF No. 16 at 25–27. The court disagrees.

An agency action is final if it (1) "marks the consummation of the agency's decisionmaking process and is not of a merely tentative or interlocutory nature," and (2) "is an action by which rights or obligations have been determined, or from which legal consequences will flow." *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (cleaned up) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). At least on the record at this stage, both are true here. The blanket pause on immigrant visas for citizens of the listed countries has been decided, announced, and implemented through directives to all consular officers to refuse visas to applicants from the 75 listed countries. *See* ECF No. 32 at 3–5. The pause took effect on January 21, 2026, and remains in place. *See id.* at 3. And the plaintiffs are likely to show the pause determines rights and obligations, and has legal consequences, by leading to the refusal to issue visas for people who would otherwise be eligible to receive them and lawfully immigrate to this country. *See id.* at 3–6. The court accordingly joins the several other courts that have concluded the pause is final agency action. *See Sangster*, 2026 WL 222316, at *3 (concluding that the visa pause is final agency action); *Ullah*, 2026 WL 1541774, at *8–9 (same); *De Moura Gomes*, 2026 WL 2212503, at *5–6 (same).

The government characterizes the visa pause as merely a communication sent to consular officers that does not itself have legal effect. ECF No. 16 at 25–27. But the Department's website specifically says "the Department of State paused all visa issuances to immigrant visa applicants who are nationals of the following countries." *Immigrant Visa Processing Updates*, U.S. Department of State, *supra* page 2. And, consistent with that decision, consular officers were told that they "must refuse" visas based on the pause unless there is some other basis to refuse the visa. ECF No. 32 at 3–5. The Secretary's blanket pause on issuance of visas to people from the listed countries therefore has the legal consequence of requiring the refusal of otherwise eligible applications.[2]

*3. The Plaintiffs Are Likely To Show The Secretary's Visa Pause Is Both Contrary To Law And Arbitrary And Capricious*

The court also joins the growing and unanimous chorus of courts that have held the blanket visa pause violates the APA. *See, e.g.*, *Sangster*, 2026 WL 222316, at *5–6 (concluding that the visa pause is contrary to law under the APA); *Ullah*, 2026 WL 1541774, at *9–10 (same); *De Moura Gomes*, 2026 WL 2212503, at *6–7 (same).

[2] The government describes the pause, in passing, as "temporary" but makes no argument that this means the pause is not final. *See* ECF No. 16 at 5. Even if it had, that would not be a very good argument. First, the agency action challenged is the decision to institute a blanket pause for some indefinite period that leads peoples' applications to be refused in the meantime, and that decision has been made. *See Ruhumuriza v. Higgins*, No. 25-cv-109, 2026 WL 587636, at *9 (D.D.C. Mar. 3, 2026) ("An agency cannot avoid judicial review by characterizing a final, operative decision as interlocutory and pending further review, someday." (cleaned up) (quoting *Janay v. Blinken*, 743 F. Supp. 3d 96, 112 (D.D.C. 2024))); *see also Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 79–80 (D.C. Cir. 2020) (concluding it "would make little sense" to call agency rules "non-final —and hence non-challengeable—merely because of the prospect that they could be displaced at some point by further agency action"). Second, although the announcement of the blanket pause indicates it may be temporary pending further review by the agency, the agency has not specified any timeline for conducting the review. The administrative record contains an action memo between State Department officials saying the pause is intended "to continue at least 90 days," but the directive to consular officers does not incorporate that timeline and, in any event, 90 days has long come and gone with the pause still in place. ECF No. 32 at 43.

a. *The Plaintiffs Are Likely To Show The Visa Pause Is Contrary To The INA And Its Implementing Regulations*

The preliminary injunction record indicates the plaintiffs are likely to show the visa pause is "not in accordance with law"—namely, that it conflicts with the INA and its implementing regulations. 5 U.S.C. § 706(2)(A); *see Sissel v. Wormuth*, 77 F.4th 941, 947–948 (D.C. Cir. 2023) (concluding "the Secretary [of the Army] acted contrary to law" when she failed to comply with "[l]ongstanding Army regulations" and "the governing statute"); *E. Band of Cherokee Indians v. U.S. Dep't of the Interior*, 534 F. Supp. 3d 86, 97 (D.D.C. 2021) ("Agency action is obviously 'not in accordance with law' if it violates some extant federal statute or regulation."); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024) (holding that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires," and "may not defer to an agency interpretation of the law simply because a statute is ambiguous").

The INA and its implementing regulations set forth a specific individualized process and criteria for consular officers to grant or refuse immigrant visas. The statute says that all "immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). The regulations accordingly recognize that, when "a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa" or must refuse it based on the INA or other applicable law. 22 C.F.R. § 42.81(a). The INA also specifies specific grounds that should and should not be considered in deciding visa eligibility. It requires consular officers to consider factors including health-related grounds, criminal history, potential risk to national security, and likelihood that the applicant will become a "public charge"—that is, someone dependent on government financial support. *See* 8 U.S.C. § 1182(a)(1)–(4). To determine if an

applicant is likely to become a public charge, the INA specifies various factors a consular officer "shall at a minimum consider," which include the applicant's "age," "health," "family status," "assets, resources, and financial status," and "education and skills." *Id.* § 1182(a)(4)(B)(i). And the INA precludes giving "any preference or priority" to or discriminating against an applicant based on certain factors, including their nationality. *Id.* § 1152(a)(1)(A).

The INA and its implementing regulations are also explicit that a visa may be refused only for reasons permitted by law. A visa is not issued "if it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under" the INA or other applicable law; if "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under" the INA or other applicable law; or the applicant otherwise "fails to comply with the provisions of this chapter, or the regulations issued thereunder." *Id.* § 1201(g). And the regulations accordingly recognize that a visa may be refused "only upon a ground specifically set out in the law or implementing regulations." 22 C.F.R. § 40.6.

The Secretary's pause, both by its terms and as spelled out in implementing directives, conflicts with the individualized scheme set forth by the INA and its implementing regulations—indeed, it does so in at least three independent ways. First, the pause instructs consular officers to refuse visas after conducting an interview even when they have not found any basis for ineligibility under the law, contrary to the INA's instruction that visas should be refused based on ineligibility under the law or noncompliance with the law, 8 U.S.C. § 1201(g), and contrary to the requirement that visas be refused "only upon a ground specifically set out in the law." 22 C.F.R. § 40.6; *see* ECF No. 32 at 3–6. Second, in addition to directing consular officers to refuse visas to people otherwise eligible under the law, the Secretary's pause directs consular officers to refuse visas

based on a characteristic that Congress expressly prohibited—the applicant's nationality. *See* 8 U.S.C. § 1152(a)(1)(A) (precluding giving "any preference or priority" to or discriminating against an applicant based on nationality); *Immigrant Visa Processing Updates*, U.S. Department of State, *supra* page 2; ECF No. 32 at 3–4. Third, the Secretary's blanket determination that people from the listed countries be refused visas based on "high risk for becoming a public charge" conflicts with the INA's instruction to make that determination based on individualized consideration of specific statutory factors. ECF No. 32 at 4; *see* 8 U.S.C. § 1182(a)(4)(B)(i). Indeed, the Secretary's implementing directive states that consular officers are to refuse visas under the pause only if they have *not* determined the applicant is a public charge under Congress's criteria. *See* ECF No. 32 at 4–5 (directing that a consular officer should refuse a visa on public charge grounds if the "officer believes an applicant is likely to become a public charge and ineligible under" Congress's criteria and refuse under the blanket pause otherwise); *id.* at 5 (directing that if an applicant "provides additional evidence that demonstrates he or she overcomes the public charge refusal" under Congress's criteria, then they should still be refused a visa under the blanket pause). The plaintiffs are thus likely to show that the visa pause conflicts with the INA and its implementing regulations.

The government concedes that the INA's text sets forth a "framework for individualized visa determinations" but argues that the Secretary's blanket pause "operates within" that framework. *See* ECF No. 16 at 28–30. The government points to the INA's general delegation of authority, which says the Secretary "shall be charged with the administration and the enforcement" of the INA and other immigration laws relating to "the powers, duties, and functions of diplomatic and consular officers of the United States, except those powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas," and shall "issue such instructions; and perform such other acts as he deems necessary for carrying out such provisions."

8 U.S.C. § 1104(a). But the general delegation to administer and "carry out" the INA does not include the power to violate its terms. As the Supreme Court has emphasized, even "when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it." *Loper Bright*, 603 U.S. at 413. Here, the Secretary has exceeded that delegation.

The government also argues the Secretary's blanket pause operates as an individualized determination because the Secretary's implementing directive tells consular officers to refuse visas based on the section that permits individualized refusal of a visa. *See* 8 U.S.C. § 1201(g); ECF No. 32 at 3–6. This fits within the INA's individualized structure, the government says, because the applicant's visa is denied "only if the officer applies § [1201(g)] in a specific adjudication." ECF No. 16 at 29. This argument boggles the mind. It is true that the INA and its regulations require a consular officer to grant or deny a completed visa application, and the INA allows the officer to refuse the visa if it fails to comply with the law or "it appears to the consular officer" or "the consular officer knows or has reason to believe" the applicant is ineligible to receive a visa under the law. 8 U.S.C. § 1201(g). As the regulations put it, refusing a visa requires the consular officer to make "a determination based upon facts or circumstances which would lead a reasonable person to conclude that the applicant is ineligible to receive a visa as provided in the INA." 22 C.F.R. § 40.6. But the Secretary cannot direct consular officers to refuse visas to all applicants from certain countries and then claim that the consular officers conducted an "individualized" refusal because they were directed to cite the statutory provision that would have entailed an actual individualized review. As explained, the blanket pause is the opposite of individualized because it directs consular officers to refuse visas regardless of any individualized determination they make

about whether the application complies with the law and the applicant is eligible under the criteria Congress specified.

*b. The Plaintiffs Are Likely To Show The Blanket Visa Pause Is Arbitrary And Capricious*

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Rather, the court "must confirm that the agency has fulfilled its duty to 'examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Ark Initiative v. Tidwell*, 816 F.3d 119, 127 (D.C. Cir. 2016) (quoting *State Farm*, 463 U.S. at 43). An agency's action is arbitrary and capricious if it "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (quoting *State Farm*, 463 U.S. at 43).

Here, the sole reason articulated for the pause is "to ensure that immigrants from high-risk countries do not unlawfully utilize welfare in the United States or become a public charge." *Immigrant Visa Processing Updates*, U.S. Department of State, *supra* page 2. The Secretary's determination of this risk based on nationality is likely arbitrary and capricious because, as the court has already explained, it relies on a factor "which Congress has not intended it to consider"—nationality—in place of the individualized consideration Congress specified. *Ark Initiative*, 816 F.3d at 127. But the Secretary also "entirely failed to consider an important aspect of the problem." *Id.* As the plaintiffs have demonstrated, the Secretary's pause completely failed to consider its impact on U.S. citizens and lawful permanent residents who reasonably expected to have their family members' applications considered based on their eligibility for a visa under law. These

people unquestionably have an important interest in being with family members. And the record indicates some of the plaintiffs were told they are eligible for visas and would receive them, but for the pause. *See, e.g.*, ECF No. 7-4 at 9 (explaining that a consular officer told one plaintiff at her interview that they would try to print her visa that day since the pause was about to take effect); *id.* at 27 (explaining that a consular officer told another plaintiff at her interview she was eligible for an immigrant visa but she could not receive one because of the pause); *see also id.* at 33, 39, 47, 57, 63, 88. By completely overlooking these interests, the Secretary failed to give the "reasoned explanation [that] is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." *FCC v. Fox Television Stations*, 556 U.S. 502, 516 (2009); *see also Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016) (explaining that, when an agency changes existing policy, it "must be cognizant that longstanding policies may have engendered serious reliance interests" (quotation marks omitted) (quoting *Fox Television Stations*, 556 U.S. at 515)).

Moreover, even accepting the Secretary's determination that people applying from the listed countries pose a risk of becoming a public charge such that reviewing visa screening policies is necessary, the Secretary fails to address why that justifies instructing consular officers to refuse visas when they believe, on an individualized basis, that the applicant does not pose a risk of becoming a public charge. *See* ECF No. 32 at 4–6. In other words, the Secretary failed to consider, let alone explain reasons for, the vast overbreadth of his pause, which requires refusing visas even when the applicant's age, health, family status, financial status, and education leave no reasonable concern they will end up as a public charge. *See* 8 U.S.C. § 1182(a)(4)(B)(i). Because it "would

be arbitrary or capricious to ignore such matters," the court concludes the plaintiffs are likely to show the pause is arbitrary and capricious. *Fox Television Stations*, 556 U.S. at 515.[3]

The court therefore concludes, like the others that have confronted the question, that the plaintiffs are likely to succeed on their claims that the Secretary's pause violates the APA.[4]

### B. The Plaintiffs Have Shown Irreparable Harm

The irreparable harm inquiry is onerous. It requires the plaintiffs to identify injury that is "certain and great" and "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (emphasis and quotation marks omitted) (quoting *Wisc. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). And that injury must also be one that is "beyond remediation." *Id*. "The possibility that adequate compensatory or other

---

[3] The government argues the doctrine of consular nonreviewability precludes judicial review of the plaintiffs' mandamus, delay, and unlawful withholding claims. ECF No. 16 at 13–16. It does not make this argument as to the claims addressed by the court, so the court considers that nonjurisdictional argument to be forfeited and waived. *See Dept. of State v. Muñoz*, 602 U.S. 899, 908 n.4 (2024) (recognizing "the doctrine of consular nonreviewability is not jurisdictional"); ECF No. 16 at 13–16. In any event, as other courts have recognized, consular nonreviewability does not apply when, as here, plaintiffs "pursue forward-looking challenges to the lawfulness of regulations or policies governing consular decisions." *Ullah*, 2026 WL 1541774, at *7 n.14 (quoting *Pietersen v. U.S. Dept. of State*, 138 F.4th 552, 560 (D.C. Cir. 2025)). The government similarly argues that the plaintiffs' mandamus, delay, and unlawful withholding claims challenge action committed to agency discretion. ECF No. 16 at 16–18. But the government does not and could not argue that imposing a blanket pause on visa issuance based on nationality is a decision committed to agency discretion given that it conflicts with the INA itself. *See Cook v. FDA*, 733 F.3d 1, 6 (D.C. Cir. 2013) (explaining that actions committed to agency discretion by law fall within a "very narrow exception" to APA review that "applies only in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply" (quotation marks omitted)).

[4] The court need not reach the plaintiffs' alternative arguments for preliminary relief that the pause required notice-and-comment rulemaking procedures, is *ultra vires*, unlawfully withholds or unreasonably delays agency action in violation of the APA and the Mandamus Act, deprives them of property without due process, and denies them equal protection of the law.

corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm." *Id.* at 297–98 (quoting *Wisc. Gas. Co.*, 758 F.2d at 674).

The plaintiffs have shown several types of imminent irreparable harm. They proffer unrebutted evidence that the Secretary's blanket pause is causing prolonged separation from their family members, time that can never be recovered. For example:

- A U.S. citizen plaintiff in Michigan who is permanently blind attests to living without the support of their wife, another plaintiff, because she is subject to the pause. ECF No. 7-4 at 19–20.
- Another U.S. citizen plaintiff in California attests to how the pause has caused their husband, another plaintiff, to never meet their one-year-old daughter. *Id.* at 4–5.
- Another U.S. citizen plaintiff in Pennsylvania attests to being separated from their wife, another plaintiff, because she is subject to the pause. *Id.* at 6.
- Another U.S. citizen plaintiff in Florida attests to suffering a miscarriage without her husband, another plaintiff, because he is subject to the pause. *Id.* at 23–24.
- A lawful permanent resident plaintiff in New York attests to worsening arthritis, requiring help with daily activities, and having to live without family after their husband passed away because their son, also a plaintiff, is subject to the pause. *Id.* at 32.
- Another U.S. citizen plaintiff in Maryland attests to being separated from their father, another plaintiff, who lives alone in Pakistan, because he is subject to the pause. *Id.* at 64–65.
- Another lawful permanent resident plaintiff in New York attests to being separated from their son, another plaintiff, because he is subject to the pause. *Id.* at 78–79.

The plaintiffs also proffer unrebutted evidence that they are losing time to make basic life plans related to family planning, employment, and education. For example:

- A U.S. citizen plaintiff in Texas attests to losing time to start a family, because their wife, another plaintiff, is subject to the pause. *Id.* at 9–10.
- Another U.S. citizen plaintiff in Massachusetts attests to losing time to become pregnant due to her age and because her husband, another plaintiff, is subject to the pause. *Id.* at 11–12.

- Another U.S. citizen plaintiff in Michigan attests to being unable to make basic housing, employment, or family planning decisions because their husband, another plaintiff, is subject to the pause. *Id.* at 15.

- Another U.S. citizen plaintiff in Colorado attests to postponing the decision to have children because their wife, another plaintiff, is subject to the pause. *Id.* at 17.

- Another U.S. citizen plaintiff in Washington, attests that their wife, another plaintiff, has been unable to commit to permanent employment because she is subject to the pause. *Id.* at 49–50.

- A noncitizen plaintiff seeking an employment-based visa from Kazakhstan attests to being unable to make long-term job commitments because they are subject to the pause. *Id.* at 94.

- A noncitizen plaintiff seeking an employment-based visa from Russia attests that due to the pause, they are losing time to grow their business in the U.S., their wife, another plaintiff, is losing time to begin professional activities in the U.S., and their daughter, another plaintiff, is losing time to begin her education in the U.S. *Id.* at 97.

And the plaintiffs proffer unrebutted evidence of threats to the safety of their family members in their home countries. For example:

- A lawful permanent resident plaintiff in California attests that due to the pause, the safety of their wife and son, also plaintiffs, is at risk while they remain in Russia amid the ongoing war. *Id.* at 25–26.

- Another lawful permanent resident plaintiff in California attests that due to the pause, the safety of their wife, another plaintiff, is at risk while she remains in Iran amid widespread violence and internet shutdowns that cutoff their communication entirely. *Id.* at 27–28.

- A U.S. citizen plaintiff in New Jersey attests that due to the pause, the safety of their wife, another plaintiff, is at risk while she remains in Pakistan, where their particular Muslim community is subject to violent persecution. *Id.* at 35–36.

- A U.S. citizen plaintiff in Colorado attests that due to the pause, the safety of their wife, another plaintiff, is at risk while she remains in Russia amid the ongoing war and disruptions to cellular and internet service. *Id.* at 45–46.

- A U.S. citizen plaintiff in Massachusetts attests that due to the pause, the safety of their wife, another plaintiff, is at risk while she remains in Iran amid armed violence that has occurred near her hometown and internet outages that cut off communication. *Id.* at 52–53.

The court finds the plaintiffs' evidence credible and that they have suffered, and will continue to suffer, irreparable harm absent preliminary relief. *See Chaplaincy*, 454 F.3d at 297–98; *see also Sangster*, 2026 WL 222316, at *4 (finding that the harm of family separation is irreparable); *Ullah*, 2026 WL 1541774, at *11 (finding that the emotional distress of a father and son being separated and the loss of time together while the father's health deteriorates was irreparable harm).

The government suggests this harm is speculative because it is possible the plaintiffs' visa applications would have been refused for reasons independent of the visa pause. ECF No. 16 at 41–42. But that argument is contradicted by the record and the terms of the pause itself. Not only is the plaintiffs' evidence of harm concrete and credible, but the very nature of the pause is that it applies only when the consular officer determines there is no other basis under the law to refuse the applicant's visa. *See* ECF No. 32 at 4–5. In other words, the policy has effect only when the visa applicant is otherwise eligible and would be granted a visa at the culmination of the process. And the record here shows that several plaintiffs have completed their interview and been refused a visa based solely on the pause. *See, e.g.*, ECF No. 7-4 at 9, 27, 33, 39, 47, 57, 63, 88. There is therefore nothing speculative about the connection between the pause and the present, concrete harm shown by the plaintiffs.

The court also rejects the government's argument that the plaintiffs' delay in bringing suit undermines their showing of irreparable harm, finding that it does not. The visa pause took effect on January 21, 2026, and the plaintiffs filed their complaint less than one month later, on February 19, 2026. *See* ECF No. 32 at 3; ECF No. 1. They moved for preliminary relief less than two weeks later, on March 3, 2026. *See* ECF No. 7. The plaintiffs in this case are ordinary people, not a sophisticated corporation with a legal arm standing at the ready. If anything, the pace at which

they obtained counsel, filed suit, and sought preliminary relief supports their claim that this pause is greatly and urgently affecting their lives. *See also Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011) (stating that "a delay in filing is not a proper basis for denial of a preliminary injunction").

**C. The Balance Of Equities And Public Interest Favor The Plaintiffs**

The balance of equities and public interest factors merge here because the government "is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The plaintiffs seek to have their visa applications adjudicated based on the individualized criteria Congress set forth, so that they may have the chance to live with family or lawfully pursue employment in this country. Additionally, the court has concluded the plaintiffs are likely to succeed in showing that the pause violates the INA and the APA, and "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). "To the contrary, there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *Id.*; *see also Sangster*, 2026 WL 222316, at *7–8 (concluding the balance of equities and public interest favor similarly-situated plaintiffs); *Ullah*, 2026 WL 1541774, at *11 (same). And even setting aside the illegality, the government has not shown that adhering to the individualized process laid out in the INA for granting and refusing visas would cause harm or outweigh the plaintiffs' equities pending suit, and it has not asserted any feasibility issue with lifting the pause as to the plaintiffs pending suit.

**D. Scope Of Relief**

Although the court finds that the plaintiffs are entitled to a preliminary injunction, the court pauses to carefully consider the proper scope of relief based on the claims it has found likely to succeed, as well as the particular harms and equities in this case. The plaintiffs ask the court to enjoin the Secretary from applying the visa pause to them and to order the Secretary to properly

adjudicate their visa applications within 30 days. ECF No. 7-1 at 36. The court finds, based on this record and its conclusions above, that it is appropriate to enjoin the Secretary from applying the visa pause to the plaintiffs. The court further finds that the appropriate relief is to restore the plaintiffs, as much as practicable, to the position they would be in but for the pause. The record indicates some of the plaintiffs' applications had been pending for a long time before, and irrespective of, the Secretary's pause; requiring the Secretary to now adjudicate those applications within 30 days may therefore go beyond the appropriate scope of relief related to the pause challenged in this case. The appropriate relief for plaintiffs with applications pending is to order the Secretary to restore their places in the queue, to the extent it was impacted by the pause. At the same time, the record indicates that several plaintiffs have completed the application process, including their interview, and had their applications refused based on the pause and therefore not based on any other reason under the law. *See, e.g.*, ECF No. 7-4 at 9, 27, 33, 39, 47, 57, 63, 88. While the court cannot make up for lost time, affording appropriate relief to those plaintiffs requires the Secretary to promptly adjudicate those applications, without giving any effect to the pause or any prior refusals that were based on the pause.

## III. Conclusion

For these reasons, the court grants in part and denies in part the plaintiffs' motion for preliminary injunction, ECF No. 7. Consistent with this opinion, the court orders:

- The Secretary shall not apply the immigrant visa pause described in ECF No. 32 at 3–6 to the plaintiffs in this matter, and shall (1) promptly restore any plaintiff's position in the application processing queue, to the extent it was impacted by the pause; and (2) promptly, and within no more than 30 days, complete the adjudication of any plaintiff's application that was refused based on the pause, without regard to any refusal issued pursuant to the

pause, including issuing a visa to any plaintiff that would have received one absent the pause.

- The Secretary shall file a status report by September 8, 2026, apprising the court of compliance with this order.

AMIR H. ALI
United States District Judge

Date: August 25, 2026